UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DARCEL GRAHAM,

    Plaintiff,

    v.      CAUSE NO. 3:19CV258-PPS/MGG

ROBERT E. CARTER JR, et al.,

    Defendants.

## OPINION AND ORDER

Darcel Graham, a prisoner without a lawyer filed a complaint (ECF 1) against multiple defendants alleging that, while he was housed at the Indiana State Prison, the defendants used excessive force against him, were deliberately indifferent to his medical needs, and retaliated against him for complaining about their indifference. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On December 29, 2017, at approximately 4:30 a.m., Graham, while wearing handcuffs, slipped and fell on an icy sidewalk while being escorted outside. He

immediately knew he had suffered a serious injury, and he told one of the officers escorting him, Sgt. Itodo, that he could not move. Sgt. Itodo did not call for immediate medical help. Instead, Sgt. Itodo, Sgt. J. Piggot, Ofc. Maldonado, and Officer B. Rei snatched Graham up off the ground and forced him into a holding cell. Around 5:30 a.m., Sgt. Itodo told Graham that, if he did not stop asking for a nurse and lieutenant and get to his cell he would be written up for interfering with the count. When Graham insisted that he could not put weight on his right side, Sgt. Itodo indicated that he would help him get to his cell. Graham then hopped up five flights of stairs with Sgt. Itodo's help. While Sgt. Itodo did not call for medical care or inform the next shift of the incident, he did provide Graham with ice for his injuries. Later that morning, around 9:00 a.m., Graham alerted another sergeant of his injuries, and he was sent to see a nurse. Graham's vitals were checked, his injuries were documented, and he was provided with ice and Tylenol.

Graham alleges the officers used excessive force when they snatched him from the ground following his fall and forced him into a holding cell. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Giving Graham the inferences to which he is entitled at this stage of the case, I find that Graham has stated an excessive force claim against Sgt. Itodo, Sgt. J.

Piggot, Ofc. Maldonado, and Officer B. Rei for snatching him from the ground when injured and forcing him into a holding cell on December 29, 2017.

Graham also alleges that the failure to immediately call for medical assistance constituted cruel and unusual punishment. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Giving Graham the inferences to which he is entitled, I find that Graham has stated a claim for deliberate indifference against Sgt. Itodo, Sgt. J. Piggot, Ofc. Maldonado, and Officer B. Rei for failing to seek medical care on Graham's behalf following his fall on December 29, 2017.

Graham filed both informal and formal grievances based on the December 29, 2017, incident. On January 19, 2018, Graham submitted a request for healthcare due to ongoing pain in his shoulder and back. Graham believes officers from K-group then

3

retaliated against him on January 21, 2018. Following his shower, at approximately 12:03 a.m. an unspecified officer locked Graham in his cell with handcuffs on despite his shoulder and back pain. Graham remained in handcuffs until round 4:30 a.m., when he was taken to see the nurse.[1] I cannot permit Graham to proceed on his retaliation claim, because he cannot proceed against unnamed individuals. *See Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997)("[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff.").

On January 22, 2018, Graham submitted two more requests for healthcare. One asked for treatment for his pain and the other sought mental health services due to distress experienced from receiving inadequate medical care and being retaliated against. On January 26, 2018, Graham saw Mr. Peyton regarding his mental health concerns. He also saw a healthcare provider (not identified) that gave him a shot of Toradol and prescribed him Kop Mobic (an anti-inflammatory medication). X-rays of his back, right shoulder, and right hip were taken on January 31, 2018. He has not viewed the X-rays, and at the time Graham filed his complaint nobody had explained the findings to him in detail.[2] Graham was seen by Ms. Thomas, a mental health expert, on February 2, 2018, and gained some relief from his distress. However, he requested coping strategies to deal with his current stresses, but he has not received any information on coping strategies. Graham was provided with Kop Mobic again on

---

[1] Graham complains that he was charged for this medical visit, but this does not state a claim. The Constitution does not require free medical care. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012).
[2] It is unclear if Graham followed the facility's procedures for obtaining copies of his medical records.

4

February 2, 2018, and with a Toradol injection on Feb. 3, 2018. On February 8, 2018, he experienced extreme pain and "fell out in his cell." (ECF 1 at 19.) He was subsequently given a Toradol shot. And then on February 12, 2018, his dose of Kop Mobic was increased to twice daily. He was also prescribed Pamelor for nerve pain. Although he requested physical therapy, none was provided. While Graham indicates he is unhappy with the medical care he has received, he has not sued any individuals that actually provided him that care. Graham has sued Corizon, but Corizon cannot be held liable for damages under § 1983 unless a policy or custom caused the alleged constitutional violation. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978); *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (Monell framework applies to private company providing medical care at correctional facility). Graham has not alleged a policy or custom of Corizon's caused his rights to be violated, so he cannot proceed against Corizon.

On June 24, 2018, Graham woke at 4:20 a.m. and heard "last call for chow" being announced. He rushed, but he did not arrive in time for breakfast. He was initially denied breakfast and went to the checkpoint to pick up his medication. He saw Sgt. Tustison and Sgt. Zimmerman and asked who was in charge. He then explained that he could not take his medication without food, so he needed one of them to order him a tray so that he could take his medication. Sgt. Tustison told him that he should not have woke up late and he could try to take his medication the next day. Graham asked to see a lieutenant. His request was denied and he was told to return to his cellhouse. He again asked to see a lieutenant indicating that his medical needs should not be denied.

Sgt. Tustison then ordered plaintiff to "cuff up." Graham gave him his right hand while facing him with his left hand holding his cane so he could be handcuffed in front. Sgt. Tustison then swung Graham's right arm around his back to cuff him. Graham made him aware that he used a cane and that his shoulder was not mobile in that direction due to his injuries. Sgt. Tustison then placed Graham in a headlock and choked him until he blacked out. When Graham came to, he was cuffed behind the back, in pain, and being forcibly escorted to the guard hall where Sgt. Tustison then aggressively pushed Graham's shoulder against the guard hall door. As noted earlier, a showing that the force used was not "a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm" will support a claim of excessive force. *See Hendrickson*, 589 F.3d at 890 (7th Cir. 2009). Graham has stated a claim against Sgt. Tustison for use of excessive force in violation of the Eighth Amendment.

Graham further alleges that Sgt. Zimmermann was present but did nothing to intervene in Sgt. Tustison's use of excessive force. State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir.2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Here, it can be reasonably inferred that Sgt. Zimmerman had sufficient time to intervene to prevent harm, and that he did not do so. Accordingly, Graham will be permitted to proceed against Sgt. Zimmermann on a claim that he failed to intervene to prevent harm to Graham in violation of the Eighth Amendment.

Lt. McNeal then came out of the guardhouse and asked Sgt. Tustison to remove the handcuffs because he was unnecessarily hurting him. Lt. McNeal took over and released some of the tension on Graham's shoulder. Graham then explained what had occurred, and he was provided with a tray so he could take his medication.[3] Graham's injuries were assessed. Graham made the medical staff aware that, as a result of the incident, he had reinjured his shoulder and lower back, and that he also hurt his neck. Graham was told to fill out a health care request form. Sgt. Tustison wrote a conduct report charging Graham with resisting. The charge was modified to interfering with staff, and Graham was found guilty of that offense.

On June 25, 2018, Graham filled out a healthcare request form complaining about his back, shoulder, and neck being reinjured the previous day. He also wrote a complaint to internal affairs and wrote to Warden Neal and others making them aware of this incident. But merely writing a letter informing someone of the incident does not lead to liability. Section 1983 "liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. Graham has not alleged that Warden Neal was involved in the June 24, 2018, incident, and I therefore cannot find that Graham has not stated a claim against him.

---

[3] To the extent that Graham is asserting a claim for being denied breakfast, that claim fails both because he did ultimately receive breakfast, although delayed, and because missing a single meal does not deprive an inmate of the minimal civilized measure of life's necessitates. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977), *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *Freeman v. Berge,* 441 F.3d 543, 547 (7th Cir. 2006); *Morris v. Kingston*, 368 F. App'x 686 (7th Cir. 2010).

On July 1, 2018, Graham was seen by a nurse and told that his scapula may be fractured or out of place and he would be referred to the healthcare provider. He was given two Tylenol tablets and sent back to his cell. X-rays were taken on July 3, 2018. Nobody shared the findings of the x-ray with him. No x-rays were ever taken of his back. Despite his injuries, cuff in front orders were never issued by the medical staff. Again, he has not sued any medical defendants here, and has not alleged that Corizon had a policy or custom that caused his rights to be violated. Therefore, he cannot proceed on claims that his medical care was inadequate.

Graham also alleges that Commissioner Carter violated his Due Process rights by not developing policies to guide employees' conduct. An allegation of a 'failure to train' is available only in limited circumstances," and this is not such a case. *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). A failure to train claim requires that "the policymakers had acquiesced in a pattern of constitutional violations," but Graham's complaint does not allege a pattern of constitutional violations. The complaint merely makes vague allegations that a lack of training somehow resulted in Graham's rights being violated. Thus, I cannot permit Graham to proceed against Commissioner Carter on his claim that he failed to develop adequate policies to guide employee's conduct.

Graham further alleges that Warden Neal violated his rights by failing to keep the sidewalk safe, failing to ensure that wrongdoers are held accountable, and failing to ensure that Graham got adequate medical care. But, as already explained, "public employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555

F.3d at 596. Furthermore, "'no prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017)(quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). As the Seventh Circuit explained in *Burks*:

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks*, 555 F.3d at 595. Likewise, Graham cannot hold Warden Neal liable for tasks that were relegated to others, including maintaining sidewalks, addressing grievances, and providing appropriate medical care.

Lastly, Graham alleges that several defendants violated various prison policies. The IDOC's failure to follow its own policy does not rise to the level of a constitutional violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Thus, Graham cannot state a claim against the defendants based on violations of prison policies.

For these reasons, the court:

(1) GRANTS Darcel Graham leave to proceed against Sgt. Itodo, Sgt. J. Piggot, Ofc. Maldonado, and Officer B. Rei in their individual capacities for compensatory and punitive damages for using excessive force against him when they snatched him from the ground and forced him into a holding cell on December 29, 2017, in violation of the Eighth Amendment;

(2) GRANTS Darcel Graham leave to proceed against Sgt. Itodo, Sgt. J. Piggot, Ofc. Maldonado, and Officer B. Rei in their individual capacities for compensatory and punitive damages for being deliberate indifferent to Graham's need for medical attention following his fall on December 29, 2017, in violation of the Eighth Amendment;

(3) Darcel Graham leave to proceed against Sgt. Tustison in his individual capacity for compensatory and punitive damages on a claim he used excessive force against Graham on June 24, 2018, in violation of the Eighth Amendment;

(4) GRANTS Darcel Graham leave to proceed against Sgt. B. Zimmerman in his individual capacity for compensatory and punitive damages on a claim he failed to intervene in Sgt. Tustison's use of excessive force against Graham on June 24, 2018, in violation of the Eighth Amendment;

(5) DISMISSES Commissioner Robert E. Carter, Jr., Warden Ron Neal, and Corizon Medical Services;

(6) DISMISSES all other claims;

(7) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Sgt. Itodo, Sgt. J. Piggot, Ofc. Maldonado, Officer B. Rei, Sgt. Tustison, and

Sgt. B. Zimmerman at the Indiana State Prison with a copy of this order and the complaint (ECF 1) as required by 28 U.S.C. § 1915(d);

(8) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that on Sgt. Itodo, Sgt. J. Piggot, Ofc. Maldonado, Officer B. Rei, Sgt. Tustison, and Sgt. B. Zimmerman respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on July 11, 2019.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT