UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DARCEL GRAHAM,

                Plaintiff,

      v.                                                                   CAUSE NO. 3:19-CV-258 DRL

ITODO *et al.*,

               Defendants.

<u>OPINION AND ORDER</u>

Darcel Graham, a prisoner without a lawyer, is proceeding in this case against six defendants on four claims. ECF 6. "[A]gainst Sgt. Itodo, Sgt. J. Piggot, Ofc. Maldonado, and Officer B. Rei in their individual capacities for compensatory and punitive damages for using excessive force against him when they snatched him from the ground and forced him into a holding cell on December 29, 2017, in violation of the Eighth Amendment[.]" *Id.* at 10. "[A]gainst Sgt. Itodo, Sgt. J. Piggot, Ofc. Maldonado, and Officer B. Rei in their individual capacities for compensatory and punitive damages for being deliberate indifferent to Graham's need for medical attention following his fall on December 29, 2017, in violation of the Eighth Amendment[.]" *Id.* "[A]gainst Sgt. Tustison in his individual capacity for compensatory and punitive damages on a claim he used excessive force against Graham on June 24, 2018, in violation of the Eighth Amendment[.]" *Id.* "[A]gainst Sgt. B. Zimmerman in his individual capacity for compensatory and punitive damages on a claim he failed to intervene in Sgt. Tustison's use of excessive force against Graham on June 24, 2018, in violation of the Eighth Amendment[.]" *Id.* The defendants filed a summary judgment motion.

ECF 60. Mr. Graham filed a response, and the defendants filed a reply. ECF 64, 65. The summary judgment motion is ripe for ruling.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a summary judgment motion, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

2

FACTS

Mr. Graham is proceeding on two claims relating to an incident that occurred on December 29, 2017, and on two claims relating to an incident that occurred on June 24, 2018. Each incident will be addressed in turn.

A.    *December 29, 2017 Incident.*

Around 4:30 a.m. on December 29, 2017, Mr. Graham was being escorted to a cell house by Officer Rei. ECF 60-6 at 8-10. Sgt. Itodo, Sgt. Piggot, and Ofc. Maldonado were present escorting other prisoners in the same area. *Id.* at 9-10. While Mr. Graham was being escorted outside, he slipped on ice and fell on the sidewalk. *Id.* at 10. Mr. Graham immediately began to yell for help and ask for medical attention. *Id.* at 11. Mr. Graham was handcuffed behind his back at the time of the fall and landed on his right side. *Id.* Immediately after falling, Mr. Graham felt pain on his right side. *Id.* Mr. Graham estimates he remained on the ground between four to ten minutes. *Id.* at 13. He asked the officers not to touch him because he was in pain, felt numb, and wanted medical attention. *Id.* Eventually, a sergeant directed the officers to pick up Mr. Graham. *Id.* at 13-14. At this point, some officers "snatched" Mr. Graham up from the ground by forcibly grabbing and moving him. *Id.* at 13. The officers then carried Mr. Graham inside and placed him in a holding cell. *Id.* at 14.

Mr. Graham remained in the holding cell until the next shift count, which occurred at approximately 5:00 a.m. or 5:30 a.m. *Id.* at 14-15. Around 5:30 a.m., Sgt. Itodo helped Mr. Graham walk back to a holding cell near the officers' station so he could speak to a

lieutenant as soon as he arrived with the next shift. *Id.* at 14-16. Sgt. Itodo directed another officer to get Mr. Graham a bag of ice, which Mr. Graham kept on his hip. *Id.* at 16.

Mr. Graham saw medical at approximately 9:00 a.m., when the next shift began. *Id.* at 15. Mr. Graham saw a nurse, who noted he had hit his right shoulder and hip when he fell. *Id.* at 24-25; ECF 60-5 at 3-4. The nurse diagnosed Mr. Graham with a contusion on his right hip with a small raised area, and a contusion on his right shoulder with redness and scratches. *Id.* The nurse instructed Mr. Graham to ice the affected areas and gave him Tylenol to take as needed for five days. ECF 60-6 at 17, 24-25; ECF 60-5 at 4. On later occasions, Mr. Graham was given Pamelor, Mobic, and Toradol injections to treat his injuries. ECF 60-6 at 17-19. Because neither party disputes these facts, the court accepts them as undisputed.

        1.    *Excessive force claim.*

Mr. Graham is proceeding against Sgt. Itodo, Sgt. Piggot, Ofc. Maldonado, and Officer Rei "for using excessive force against him when they snatched him from the ground and forced him into a holding cell[.]" ECF 6 at 10. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To survive summary judgment, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Id.* at 322. The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed

versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019).

Here, Mr. Graham attests only that the defendants "snatched" him off the ground and "forced" him into a holding cell after he fell down outside and was unable to walk on his own. *See* ECF 64-2 at 3. When asked to explain what he meant by "snatching" him off the ground, Mr. Graham explained "to forcefully grab me and move me." ECF 60-6 at 13. Mr. Graham provides no details about the level of force used by the defendants by which a reasonable jury could conclude the defendants intended to cause him harm. Moreover, Mr. Graham offers no evidence the defendants' use of force caused any injury, as he brings no evidence he suffered any injury beyond the injuries he sustained from falling on the ice. Thus, Mr. Graham has not offered sufficient evidence by which a reasonable jury could conclude the defendants used force maliciously and sadistically to cause him harm. Summary judgment is thus warranted in favor of the defendants on this claim.

2.    *Deliberate indifference claim.*

Next, Mr. Graham is proceeding against Sgt. Itodo, Sgt. Piggot, Ofc. Maldonado, and Officer Rei "for being deliberate indifferent to Graham's need for medical attention following his fall on December 29, 2017, in violation of the Eighth Amendment[.]" ECF 6 at 10. To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendants acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate

indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Here, no reasonable jury could conclude the defendants were deliberately indifferent to Mr. Graham's medical need. The undisputed evidence shows they responded reasonably to his need. Specifically, it is undisputed Mr. Graham fell at approximately 4:30 a.m., the defendants transported him to a holding cell shortly after his fall, the defendants provided him ice for his hip around 5:30 a.m., and the defendants took him to see a nurse "when the next shift began" around 9:00 a.m. *See* ECF 64-1 at 3-4; ECF 60-6 at 15-17. The defendants' conduct of transporting Mr. Graham to a safe location and providing him ice for his injuries shows they did not act with "total unconcern" for his welfare. Moreover, to the extent Mr. Graham argues the defendants delayed in sending him to a nurse, there is no evidence Mr. Graham needed to see a nurse immediately after his fall. Additionally, Mr. Graham has not provided any verifying medical evidence that any delay in sending him to see a nurse had a detrimental effect on his condition, as the nurse only diagnosed him as having bruises on his hip and shoulder and treated him with ice and Tylenol. *See* ECF 60-5 at 4; *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) ("[a]n inmate who complains that delay in medical

treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed"). Thus, based on the record before this court, no reasonable jury could conclude the defendants' conduct evidenced a total unconcern for Mr. Graham's welfare in the face of serious risks.

      B.     *June 24, 2018 Incident.*

On June 24, 2018, Mr. Graham arrived late for chow hall, proceeded to a checkpoint where Sgt. Tustison and Sgt. Zimmerman were present, and asked Sgt. Tustison for a food tray. ECF 60-6 at 21-23. Sgt. Tustison ordered Mr. Graham to return to his housing unit. ECF 60-1 at 2; ECF 60-6 at 26. At this point, the accounts from the parties differ.

Mr. Graham attests to the following facts: After Sgt. Tustison ordered Mr. Graham to return to his housing unit, Mr. Graham requested to speak to a lieutenant. ECF 64-2 at 10. At that point, Sgt. Tustison ordered Mr. Graham to cuff up. *Id.* Mr. Graham gave Sgt. Tustison his right hand while holding his cane with his left hand as to cuff up in front. *Id.* Sgt. Tustison went to swing Mr. Graham's right arm behind his back, at which time Mr. Graham made him aware he used a cane and his shoulder was not mobile in that direction. *Id.* Sgt. Tustison then placed Mr. Graham in a headlock and choked him until he blacked out. *Id.* When Mr. Graham came to, he was cuffed behind his back and being forcefully escorted by Sgt. Tustison to the guard hall, which caused him major pain. *Id.* When they arrived at the guard hall, Sgt. Tustison aggressively pushed Mr. Graham's shoulder against the guard hall doors. *Id.*

Sgt. Tustison admits he used force on Mr. Graham, but attests he used only enough force as was necessary to restore order and to protect his safety and Sgt. Zimmerman's.

ECF 60-1 at 3. Specifically, Sgt. Tustison attests that Mr. Graham refused the order to return to his housing unit, began angrily shouting at the sergeants, and refused orders to cuff up. *Id.* at 2. Sgt. Tustison attempted to place Mr. Graham in physical restraints, but Mr. Graham pulled his hand away and resisted the restraints. *Id.* Mr. Graham then raised his other hand, which was holding a cane, toward Sgt. Tustison aggressively. *Id.* Sgt. Tustison perceived Mr. Graham intended to hit him with the cane and used force against Mr. Graham by pinning him against a counter and applying restraints. *Id.* at 2-3. Once restrained, Mr. Graham was escorted to the custody hall and placed in a holding cell without further incident. *Id.* at 3.

1.    *Excessive force claim against Sgt. Tustison.*

Mr. Graham is proceeding against Sgt. Tustison "on a claim he used excessive force against [Mr.] Graham on June 24, 2018, in violation of the Eighth Amendment[.]" ECF 6 at 10. The defendants argue summary judgment is warranted in favor of Sgt. Tustison because any force he used against Mr. Graham was applied in a good faith effort to restore discipline. ECF 61 at 14-15. However, there are disputed material facts whether Sgt. Tustison's use of force was a good faith effort to restore discipline. Specifically, Mr. Graham attests he did not resist Sgt. Tustison's attempt to restraint him or raise his cane in a threatening manner, but only tried to make Sgt. Tustison aware he used a cane and could not be cuffed up behind his back. Moreover, Mr. Graham attests Sgt. Tustison responded by placing him in a headlock and choking him until he was unconscious. The contrary attestations between Mr. Graham and the defendants create a credibility dispute. *See Payne*, 337 F.3d at 770 (the court will not "make credibility determinations" or "weigh the evidence" in ruling on a summary

8

judgment motion). Construing these facts in Mr. Graham's favor, a reasonable jury could conclude Sgt. Tustison used excessive force against Mr. Graham. Thus, Sgt. Tustison is not entitled to summary judgment.

The defendants also argue they are entitled to qualified immunity because their actions were not clearly unconstitutional under clearly established law. ECF 61 at 19-21. However, this argument fails as to Sgt. Tustison because there are disputed material facts regarding the amount of force Sgt. Tustison used against Mr. Graham. *See Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) (recognizing that disputed material facts regarding the elements of a constitutional claim precludes dismissal based on qualified immunity). Moreover, crediting Mr. Graham's version of events, it would be clear to a reasonable officer that placing an inmate in a headlock when he was not actively resisting and choking him until he was unconscious was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). Thus, Sgt. Tustison cannot avoid trial on grounds of qualified immunity.

2.     *Failure to intervene claim against Sgt. Zimmerman.*

Mr. Graham is proceeding against Sgt. Zimmerman on "a claim he failed to intervene in Sgt. Tustison's use of excessive force against Graham on June 24, 2018[.]" ECF 6 at 10. State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable for failure to intervene. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000)

(citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). A bystander officer may be held liable for the excessive force of another officer if the bystander officer: "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

Sgt. Zimmerman argues he is entitled to summary judgment because Sgt. Tustison did not use excessive force against Mr. Graham. ECF 61 at 16-17. However, as discussed above, there are disputed material facts whether Sgt. Tustison used excessive force against Mr. Graham. Moreover, Sgt. Zimmerman and Sgt. Tustison both attest that Sgt. Zimmerman was present during Sgt. Tustison's use of force and assisted Sgt. Tustison in restraining Mr. Graham. ECF 60-1, 60-2. Thus, because a reasonable jury could conclude Sgt. Tustison used excessive force on Mr. Graham, it could likewise conclude Sgt. Zimmerman had reason to know of Sgt. Tustison's use of force and had a reasonable opportunity to prevent the act from occurring. Thus, Sgt. Zimmerman is not entitled to summary judgment. Lastly, for the same reasons discussed above, Sgt. Zimmerman cannot avoid trial on qualified immunity grounds.

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 60) with respect to Darcel Graham's claims against Sgt. Moses Itodo, Sgt. J. Piggot, Ofc. Maldonado, and Officer B. Rei;

(2) DENIES the motion for summary judgment (ECF 60) with respect to Darcel Graham's claims against Sgt. Matthew Tustison and Sgt. Blake Zimmerman; and

(3) REMINDS the parties this case is now proceeding only on: (1) Darcel Graham's excessive-force claim against Sgt. Matthew Tustison, in which he alleged Sgt. Tustison used excessive force against him on June 24, 2018, by placing him in a headlock and choking him until he was unconscious despite the fact he was not attempting to physically resist; and (2) Darcel Graham's failure-to-intervene claim against Sgt. Blake Zimmerman, in which he alleged Sgt. Zimmerman failed to intervene during Sgt. Tustison's use of excessive force on June 24, 2018.

SO ORDERED.

November 12, 2021                                  *s/ Damon R. Leichty*
                                                   Judge, United States District Court

11